UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRIM FIT, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. 4:06-CV-49 CEJ |
| ) | **Consolidated with 4:06-CV-1695** |
| DONALD O. DICKEY, et al., ) | |
| ) | |
| Defendants. ) | |

**AMENDED MEMORANDUM AND ORDER**

This matter is before the Court on several post-judgment motions of the parties relating to the issues of damages and attorney's fees.

**I. Plaintiffs' Motion to Amend Judgment and Stay Execution**

On October 11, 2007, the Court entered judgment in the amount of $140,743.92 in favor of plaintiff Joe Voss, and against defendant Donald Dickey, on Voss's claim for breach of a promissory note. On that same date, the Court also entered judgment in the amount of $45,514.14 in favor of defendant Dickey on his counterclaim against plaintiff Trim Fit for breach of contract. On October 18, 2007, Voss assigned his interest in the judgment to Trim Fit.

In the instant motion, plaintiffs Voss and Trim Fit ask that the Court amend the judgment to offset the judgment for Voss by the amount of the judgment for Dickey. The plaintiffs additionally ask that the Court enter an order staying any efforts by Dickey to

collect on the judgment entered in his favor. Plaintiffs have offered to deposit the full amount of the judgment against Voss into the registry of the Court as security in the event of an appeal by Dickey.

Under some circumstances, a judgment against a party may be set off against a judgment in that party's favor. Payne v. Payne, 695 S.W.2d 494, 496 (Mo. Ct. App. 1985). Judgments, however, are subject to the rule of mutuality. A set-off "requires that demands be mutual and subsisting between the same parties, and due in the same capacity or right." Id. See also Gibson v. Harl, 857 S.W.2d 260, 270 (Mo. Ct. App. 1993). If mutuality exists, "[j]udgments concerning claims and cross-claims are generally offset and there is only one final judgment for the balance owed the party with the larger judgment." Mills v. First Nat'l Bank of Mexico, 697 S.W.2d 264, 266 (Mo. Ct. App. 1985). Courts may disregard a corporate entity where justice demands it. 21 West, Inc. v. Meadowgreen Trails, Inc., 913 S.W.2d 858, 869 (Mo. Ct. App. 1995).

By virtue of the assignment, Trim Fit has succeeded to Voss's rights under the judgment. Therefore, mutual demands between Trim-Fit and Dickey are now present. The Court also considers as relevant factors the difference in the sizes of the judgments, the offer by Trim Fit to deposit into the court registry the amount it owes under the judgment to Dickey, the absence of any similar offer by Dickey, and the uncontroverted allegation of Dickey's involvement in a bankruptcy relating to a business with which he

was involved. These factors create a greater level of confidence in Trim Fit's intent and ability to pay what it owes to Dickey than in Dickey's intent and ability to pay what he owes to Trim Fit. Additionally, the fact that Dickey resides in Arkansas would unnecessarily complicate the efforts of Trim Fit, located in Missouri, to collect on the judgment.

The Court concludes that a set off of the two judgments would be both equitable and reasonable. Therefore, an amended judgment will be entered to reflect the set-off. Trim Fit will be required to pay into the registry of the Court the full amount of the original judgment ($45,514.14) that was entered in favor of Dickey. Because it does not appear that any collection efforts have been made by Dickey and because of Trim Fit's deposit of the judgment amount into the registry, it is unnecessary to stay execution of the judgment entered in favor of Dickey.

## II. **Defendant Dickey's Motion for Prejudgment Interest**

Dickey asks the Court to amend the $45,514.14 judgment in his favor to include prejudgment interest. Dickey claims that he is entitled to an award of prejudgment interest at an annualized rate of 9 percent, under Mo. Rev. Stat. § 408.020, commencing on December 31, 2005 and continuing at a rate of $11.22 per day until the commissions are paid.

Trim Fit opposes any award of prejudgment interest, arguing that no interest can be awarded on unliquidated claims. Trim Fit

argues that because the parties disputed whether Trim Fit owed Dickey any commissions under the Independent Contractor Agreement, the claim was not "liquidated" as required by the statute. Plaintiff further asserts that Dickey was not a creditor of Trim Fit, and that the amount of damages cannot be ascertained because the parties did not agree on Dickey's compensation in the year 2005. Finally, Trim Fit maintains that the jury presumably followed the instruction to award Dickey an amount that fairly and justly compensated Dickey, and thus the jury verdict in Dickey's favor, which does not include prejudgment interest, should not be disturbed.

Trim Fit and Voss entered into the Independent Contractor Agreement on January 26, 2004. Among other things, the Agreement provided that "the rights and obligations of the parties hereto shall be construed and determined in accordance with Missouri law."

### A. Prejudgment Interest Under Missouri Law

Prejudgment interest is a matter of substantive state law. First American States Bank v. Milnikel, 897 F.2d 319, 327 (8th Cir. 1990). Missouri's prejudgment interest statute, Mo. Rev. Stat. § 408.020, provides in relevant part:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made.

For prejudgment interest to be awarded, the claim for damages must

4

be liquidated. Rois v. H.C. Sharp Co., 203 S.W.3d 761, 766 (Mo. Ct. App. 2006). "A claim is liquidated when the claim is 'fixed and determined or readily determinable, but it is sufficient if the amount due is ascertainable by computation or by a recognized standard.'" Id. "The mere existence of a dispute relative to liability does not render a claim unliquidated," and if "the amount of damages is fairly certain, even though liability is an issue, the court will award prejudgment interest." Lundstrom v. Flavan, 965 S.W.2d 861, 866 (Mo. Ct. App. 1998). See also Vogel v. A.G. Edwards & Sons, Inc., 801 S.W.2d 746, 758 (Mo. Ct. App. 1990). No "exact calculation" of a claim is required for a claim to be liquidated. Hocker Oil Co. v. Barker-Phillips-Jackson, Inc., 997 S.W.2d 510, 521 (Mo. Ct. App. 1999). If the prejudgment interest statute applies, an award of interest is not discretionary, but is compelled. Rois, *supra*, 203 S.W.3d at 767.

"Under Missouri law, a defendant's denial of liability or challenge to the amount claimed on a contract will not alter the fact that the amount claimed by the plaintiff is sufficiently ascertainable to require the award of prejudgment interest." St. Joseph Light & Power Co. v. Zurich Ins. Co., 698 F.2d 1351, 1356 (8th Cir. 1983). See also Schmidt v. Morival Farms, 240 S.W.2d 952, 961 (Mo. 1951) ("Interest is the measure of damages for failure to pay money when payment is due even though the obligor refuses payment because he questions legal liability for all or portions of

5

the claim.").

Here, the amount of payment due under the Independent Contractor Agreement was a percentage of the sales that Dickey made on behalf of Trim Fit. Specifically, Dickey was to receive 8 percent of sales dollars of "end blocks" and 3 percent of sales dollars of "pre-cut webs;" sales amounts were to include only dollars collected, and not unpaid receivables. If Dickey brought a new account to the company that would buy truckload quantities, he would receive an additional 4 percent on the first three loads. Finally, a year-end bonus was to be paid based on 10 percent of the company profit. See Independent Contractor Agreement, Schedule A. While the actual dollar amount of the commissions was not determined until trial, and the parties disputed whether Trim-Fit was required to pay the commissions, it cannot be said that the amount of damages was not ascertainable. The damages under the Agreement thus were liquidated, and the Court will therefore amend the judgment in favor of Dickey to include an award of prejudgment interest.

**B. Date of Prejudgment Interest Accrual**

When the amount of the payment due under a written contract and the date on which it becomes due are conclusively established by the evidence, courts are permitted to add prejudgment interest to the jury verdict, as a matter of law. Hamra v. Boone County Development Co., 602 S.W.2d 721, 725-27 (Mo. Ct. App. 1980);

6

Campbell v. Kelley, 719 S.W.2d 769, 772 (Mo. banc 1986); Rheem Mfg. Co. v. Progressive Wholesale Supply Co., 28 S.W.3d 333, 343 (Mo. Ct. App. 2000). In actions for breach of contract, interest "ordinarily runs from the date of the breach or the time when payment was due under the contract." Prudential Ins. Co. v. Goldsmith, 192 S.W.2d 1, 3 (Mo. Ct. App. 1945). See also Jerry Bennett Masonry Contractor, Inc. v. Crossland Construction Co., 213 S.W.3d 733, 736 (Mo. Ct. App. 2007).

The evidence at trial established that the Independent Contractor Agreement was effective until December 31, 2005. Although Trim Fit disputed its obligation to perform under the agreement, the jury found in Dickey's favor on his counterclaim that Trim Fit was obligated and had failed to pay Dickey under the Agreement. The Agreement did not specify a rate of interest on unpaid compensation in the event of a breach. Thus, Dickey is entitled to prejudgment interest at the statutory rate of 9 percent per annum, beginning on December 31, 2005, and ending on the date of the judgment, October 11, 2007. The Court will award $7,282.75 as prejudgment interest to defendant Dickey.[1]

---

[1] The jury found that Dickey was due $45,514.14 for the breach of the Independent Contractor Agreement. Applying the statutory interest rate of 9 percent per annum to this amount results in damages of $4,096.27 per year or $11.22 per day. Thus, Dickey is entitled to receive $4,096.27 for the year 2006, and pro-rated damages of $11.22 a day for the first 284 days of 2007 (from January 1, 2007, to October 11, 2007, the date of judgment).

The prejudgment interest amount will also be offset against the damages award to Voss. The amended judgment will therefore

Dickey asserts that interest should continue to accrue until the commissions owed to him are paid. Prejudgment interest, however, runs to the date of the judgment. Jerry Bennett Masonry, 213 S.W.3d at 736. Any unpaid interest on the judgment is recoverable under the post-judgment interest statute, Mo. Rev. Stat. § 408.040, and not under § 408.020, the prejudgment interest statute. Cf. Jerry Bennett Masonry, *supra* (finding that any right appellant had to prejudgment interest "expired when that contractual obligation was reduced to a judgment obligation.").

### III. Defendant Dickey's Motion for Statutory Penalty

Defendant Dickey asks the Court to amend the judgment to include a statutory penalty under Missouri's Sales Commissions Statute, Mo. Rev. Stat. § 407.913. In the alternative, Dickey asserts that facts underlying a claim under the statute were established at trial, and he moves to conform the pleadings to the evidence. In relevant part, the statute provides:

> Any principal who fails to timely pay the sales representative commissions earned by such sales representative shall be liable to the sales representative in a civil action for the actual damages sustained by the sales representative and an additional amount as if the sales representative were still earning commissions calculated on an annualized pro rata basis from the date of termination to the date of payment.

Mo. Rev. Stat. § 407.913.

Trim Fit opposes any post-verdict, post-judgment amendment of

---

reflect an award to Voss in the sum of $87,947.03.

the counterclaim. Trim Fit asserts that allowing the amendment would be prejudicial, as Trim Fit did not engage in discovery or trial preparation with respect to the sales commission statute. Moreover, Trim Fit argues that the statute is inapplicable when the sales representative is not terminated by the principal. In support of this argument, Trim Fit points to evidence that in 2005 Dickey began working for a competing company and voluntarily quit his employment with Trim Fit. Additionally, Trim Fit cites McKay v. WilTel Communication Systems, Inc., 87 F.3d 970 (8th Cir. 1996), in which the court, construing an earlier version of § 407.913 that contained the same language as the current version, wrote that "the statute appears designed to prevent loss of commissions because of discharge from employment." Id. at 975. In McKay, the Court held that the statute was inapplicable because the plaintiff had been "paid . . . his contractual commission and he was never terminated." Id.

Dickey first raised the issue of the sales commission statute less than one month before trial when he sought leave to amend the counterclaim to assert an additional cause of action based on the statute.[2] Plaintiffs opposed the motion, noting that the parties had already filed their pretrial materials by the time the motion was filed. Plaintiffs objected that the belated assertion of a new

---

[2] The motion to amend was filed on September 24, 2007. The trial began on October 9, 2007.

statutory cause of action gave them no opportunity to conduct discovery on the issue.

On the first day of trial, the Court heard arguments on the motion to amend the counterclaim. Dickey argued that allowing the amendment would not prejudice plaintiffs, because the same set of facts underlay both the existing causes of action and the claim under the sales commission statute and no additional discovery was required.

The Court determined that additional facts would have to be developed to support a claim under the sales commission statute and concluded that the late amendment would therefore prejudice the plaintiffs. The Court denied the motion for leave to amend the counterclaim to assert a claim under Mo. Rev. Stat. § 407.911.

Dickey now maintains that his earlier request for leave was unnecessary, because statutory damages follow from the verdict in his favor on his claim for breach of the Independent Contractor Agreement. Dickey further argues that he introduced evidence at trial that established that Trim Fit was a principal, that Dickey was a sales representative, and that he was entitled to but was not paid commissions during 2005. Dickey maintains that Trim Fit, by failing to object to this evidence, consented to trial of the issues that support a claim under the sales commission statute. Dickey asserts that the pleadings should be amended accordingly to conform to the evidence.

### A. Amendment of Pleadings

Rule 15(a)(2), Fed. R. Civ. P., provides that leave to amend pleadings should be freely given when justice so requires. Motions to amend "should normally be granted absent good reason for a denial. . . . The classic 'good reasons' for rejecting an amendment are: 'undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment.'" Popp Telecom v. American Sharecom, Inc., 210 F.3d 928, 943 (8th Cir. 2000), quoting Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).

The disposition of a motion to amend is within the sound discretion of the district court. Sprynczynatyk v. General Motors Corp., 771 F.2d 1112, 1125 (8th Cir. 1985). The Court of Appeals for the Eighth Circuit found no abuse of discretion when the district court denied a motion "mainly because it was untimely" and "would have been disruptive to the trial schedule and potentially prejudicial" to the opposing party. Id.

Plaintiffs argued, and the Court agreed, that the motion, filed after discovery had closed and after pretrial materials were filed, was untimely and would prejudice plaintiffs. The Court declines to consider the issue again in the wake of the jury verdict and entry of judgment.

### B. Conforming Pleadings to the Evidence

Dickey moves in the alternative to conform the pleadings to the evidence, pursuant to Rule 15(b), Fed. R. Civ. P. Rule 15(b) provides:

> (1) If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.
>
> (2) When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move - at any time, even after judgment - to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.[3]

The purpose of Rule 15 is to "'promote the objective of deciding cases on their merits rather than in terms of the relative pleading skills of counsel'" or "procedural niceties." Baker v. John Morrell & Co., 266 F.Supp.2d 909, 927 (N.D. Iowa 2003), quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1491, at 454 (1971); and quoting Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982).

Amended complaints that "merely amplif[y] . . . allegations that have been proven" should be allowed, but the Court "is not required to grant a motion to amend on the basis of some evidence

---

[3] The Court notes that stylistic amendments to Rule 15(b) became effective December 1, 2007, after the instant motion was fully briefed.

12

that would be relevant to the new claim if the same evidence was also relevant to a claim originally pled. The introduction of such evidence does 'not provide the defendant any notice' that the implied claim was being tried." Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1256 (8th Cir. 1994), quoting Herrera v. Valentine, 653 F.2d 1220, 1224 (8th Cir. 1981), and Pariser v. Christian Health Care Systems, Inc., 816 F.2d 1248, 1253 (8th Cir. 1987). The Court's primary concern when considering a Rule 15(b) motion is possible prejudice to the defendant. Baker, 266 F.Supp.2d at 928.

As explained above, the Court denied defendant's motion to amend the counterclaim on the first day of trial, chiefly because of the prejudice to plaintiffs that would result from the eleventh-hour amendment. Plaintiffs would be prejudiced if, after having denied leave to include the sales commissions claim on the first day of trial, the Court now reversed course and revisited the issue in the wake of a jury verdict and entry of judgment. The defendant's motion to conform the pleadings to the evidence will be denied.

### V. **Voss's Motion for Attorneys' Fees**

Plaintiff Voss moves for an award of $45,043.50 in attorney's fees, pursuant to the Promissory Note dated April 9, 2002.[4] The

---

[4] Voss's attorneys initially moved for an award of $41,642 in attorney's fees, but later increased that amount by $3,448, to account for time spent working on the motion for attorney's fees and related documentation.

13

Note provides:

> Each maker and endorser further agrees, jointly and severally, to pay all cots of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof. This note is to be construed and enforced according to the laws of the state of Missouri.

In support of his request, Voss provides a summary of his attorney's fees, identifying the particular item billed for (*e.g.*, "Mediation," "Summary Judgment"), the total amount of the bill, and the percentage and amount of that bill attributable to the promissory note case, expressed either as a percentage or in a dollar amount. Voss also provides monthly invoices for legal work that appears to have been done for him and for Trim-Fit.

Dickey asserts that the request for $41,642 is excessive. Dickey emphasizes that the claims of Voss and Trim-Fit were consolidated for trial, but the action initially involved more claims than were tried to the jury. Dickey argues that the Court should award no more than $13,360.25, which he asserts represents a fair amount for Voss's claims.

### A. **Determining Reasonable Attorney's Fees**

Under the "American rule," litigants generally must bear the expense of their own attorney's fees, but an exception to the rule arises when a contract contains a provision allowing the prevailing party to recover attorney's fees. Sheppard v. East, 192 S.W.3d 518,

523 (Mo. Ct. App. 2006).[5] When a claim to attorney's fees is based upon a contract, the court must adhere to the terms of the contract and may not go beyond it. Harris v. Union Elec. Co., 766 S.W.2d 80, 89 (Mo. banc 1989) (citation omitted). Here, the contract obligates Dickey to pay "a reasonable attorney's fee."

The trial court is considered an expert on the question of attorney's fees. McClain v. Papka, 108 S.W.3d 48, 54 (Mo. Ct. App. 2003). "In the absence of contrary evidence, the trial court is presumed to know the character of services rendered regarding duration, zeal, and ability and to know the value of them according to custom, place, and circumstance." Id. An important factor in determining what is a reasonable attorney's fee is the amount involved or the result obtained. Id.

To determine the amount of a reasonable attorney fee, the Court employs the "lodestar" method. See H.J., Inc. v. Flyght Corp., 925 F.2d 257 (1991); Alberici Corp. v. Davis, 2006 WL 2632214 (E.D. Mo., Sept. 12, 2006). In determining a "reasonable" fee award, the court begins by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Once the Court has determined the lodestar amount, it should consider several other factors to determine whether the fee should be adjusted upward or

---

[5] Another exception exists if an award of attorney's fees is provided for by a statute. DeAngelo Bros., Inc. v. Estate of Horne, 2007 WL 1501126 at *3 (W.D. Mo. May 21, 2007).

downward.[6] Id. at 434.

A reasonable hourly rate is calculated based on the attorney's regular hourly rates as well as the prevailing market rates in the community. Blum v. Stenson, 465 U.S. 886, 896 (1984); H.J. Inc. v. Flygt Corp., 925 F.2d 257, 260 (8th Cir. 1991). In determining a reasonable hourly rate, the Court may consider the skill of representation, difficulty of work performed, counsel's experience, and counsel's reputation. Hensley, 461 U.S. at 433.

The party seeking litigation fees bears the burden to provide "evidence of the hours worked and the rate claimed." Northeast Iowa Citizens for Clean Water v. Agriprocessors, Inc., 489 F.Supp.2d 881, 900 (N.D. Iowa 2007). Where the documentation of hours is inadequate, the district court may reduce the award accordingly. Id., citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The award also may be reduced to exclude excessive, redundant, or unnecessary hours. Hensley, 461 U.S. at 433. "Incomplete or imprecise billing records preclude any meaningful review by the

---

[6] Other factors the court may consider are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney(s); (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

district court of the fee application for 'excessive, redundant, or otherwise unnecessary' hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim. H.J. Inc., 925 F.2d at 260.

If it is not possible for the court to determine which hours were spent on particular claims or issues because of imprecise billing records, the court may resolve uncertainties against the party requesting fees, and simply reduce the lodestar amount. H.J. Inc., 925 F.2d at 260.

**B.  Voss's Attorneys' Billing Records**

Two attorneys, Kenneth Heinz and Mitchell Margo, performed work on behalf of Joseph Voss. Kenneth Heinz charges an hourly rate of $200 for his services, while Mitchell Margo charges an hourly rate of $260.

Courts in this district have recently approved attorney's fees between $130 and $350 per hour. See, e.g., Thirty and 141, LP v. Lowe's Home Centers, Inc., 4:06-CV-01781 (SNL) (May 6, 2008) (contract reformation); Roark v. South Iron R-1 School Dist., 4:06-CV-392 (CDP) (May 27, 2008) (civil rights); and Finan v. Good Earth Tools, Inc., 4:06-CV-878 (CAS) (April 21, 2008) (employment law). Accordingly, the Court finds that the hourly rates requested by plaintiff Voss's attorneys, $200 and $250 per hour, respectively, are reasonable for the St. Louis community.

The documentation provided by plaintiff Voss's attorneys is

not precise enough for the Court to determine which of the several claims in the consolidated cases were billed for. For example, plaintiff's attorneys billed for 6.40 hours for "preparation for an attendance at court-ordered mediation" (Supplemental Exh. 6); 1.10 hours for "review pretrial filings'; office conference with K. Heinz; prepare for witness and trial" (Supplemental Exh. 15); and 4.0 hours for "trial preparation" (Supplemental Exh. 16).

These notations, which are representative of the specificity with which all billable hours were annotated, are inadequate to apprise the Court as to the claim the attorney was working on, and for which client.[7] Further, it is not clear whether some of the fees plaintiff's attorneys attempt to collect are for work done on Voss's claims. For example, hours billed in August 2007 include "conversations with Gator Joist attorneys" (Supplemental Exh. 14). Gator Joist, LLC was a defendant in the case of Trim-Fit v. Dickey, with which Voss's action was later consolidated. Gator Joist was dismissed as a defendant in April 2006, more than a year before trial, and several months <u>before</u> Voss's action was consolidated with Trim-Fit's action. The plaintiff's attorney's billing records are thus of little help to the Court in determining whether the hours were reasonably expended.

---

[7] The Court observes that only three of the billing statements (Supplemental Exh. 1-3) were submitted by plaintiff's attorney's were addressed to "Joseph Voss" at an address on Hormeyer Road in Owensville, Missouri. The other statements (Exh. 4-16) were addressed to "Trim-Fit, LLC c/o Joe and Rhoda Voss" at the same Hormeyer Road address.

Voss's claim for breach of a promissory note was a straightforward legal issue of minor complexity. Nonetheless, defendant defended against the note vigorously, and plaintiff filed a motion for summary judgment and proceeded to trial on the promissory note claim. Voss's attorneys' billing records, as explained, are not sufficiently detailed to allow the Court to engage in a more precise analysis. The Court finds that an award of attorney's fees in the amount of $13,360.25 is appropriate in this case. This amount is calculated based on a rate of $230.00 per hour (the median between the two attorneys' billing rates) times 58 hours, which represents a reasonable amount of time for the activities associated with Voss's claim, plus costs.

**VI. <u>Dickey's Motion for Attorney's Fees</u>**

Defendant Dickey moves for an award of attorney's fees in the amount of $36,305, pursuant to the Missouri Sales Commission statute, Mo. Rev. Stat. § 407.913. Plaintiffs oppose the motion. For the reasons explained above, the Court will deny the defendant's motion for leave to amend the counterclaim to include a cause of action under **§** 407.913. Defendant thus has no statutory basis for an award of attorney's fees, and he has not asserted any other basis upon which he would be entitled to recover attorney's fees. The Court will deny defendant's motion for an award of attorney's fees.

Accordingly,

**IT IS HEREBY ORDERED** that the plaintiffs' motion to amend the judgment [# 131] is **granted.** The judgment will be amended to offset the damages award to defendant Donald O. Dickey, together with prejudgment interest, against the damages award to plaintiff Joseph E. Voss.

**IT IS FURTHER ORDERED** that plaintiff Trim Fit, LLC shall pay into the registry of the Court the sum of $45,514.14 to be held by the Clerk of Court pending final disposition of this case.

**IT IS FURTHER ORDERED** that the defendant's motion for an award of prejudgment interest [# 123] is **granted in part** and **denied in part.** Defendant is entitled to $7,282.75 in prejudgment interest.

**IT IS FURTHER ORDERED** that defendant's motions to amend the judgment or to conform pleadings to the evidence [## 123, 129] are **denied.**

**IT IS FURTHER ORDERED** that defendant's motion for an award of attorney's fees [# 136] is **denied**.

**IT IS FURTHER ORDERED** that the motion of plaintiff Joseph E. Voss motion for an award of attorney's fees [# 126] is **granted in part**. Plaintiff Voss is awarded attorney's fees in the sum of $13,360.25.

                                        CAROL E. JACKSON
                                        UNITED STATES DISTRICT JUDGE

Dated this 6th day of November, 2008.